UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH RUIGOMEZ, an individual,
KATHLEEN RUIGOMEZ, an individual, and
JAMIE RUIGOMEZ, an individual,

          Plaintiffs,

v.

THE DINARDO LAW FIRM, P.C., a New York Corporation, JOSEPH DINARDO, an individual, and DOES 1-20 inclusive,

          Defendants.

22-CV-_____

---

# COMPLAINT

Through this complaint plaintiffs Joseph Ruigomez, Kathleen Ruigomez, and Jamie Ruigomez ("Plaintiffs") seek to recover $6,325,000 of Plaintiffs' settlement monies that, on information and belief, defendants The DiNardo Law Firm, P.C. and Joseph DiNardo (collectively, "Defendants") converted and or stole from Plaintiffs' settlement monies that were in the Girardi Keese Law Firm ("GK") client trust account, after the DiNardo Law Firm, P.C. ("DiNardo Law Firm") received two GK client trust account checks of $5,825,000 and $500,000.

## PARTIES

1.    Plaintiff Joseph Ruigomez ("Joseph")[1] is, and at all relevant times was, an individual residing in San Mateo County, California, and is a citizen of the State of California for purposes of 28 U.S.C. § 1332(a).

2.    Plaintiff Kathleen Ruigomez ("Kathleen") is, and at all relevant times was, an individual residing in San Mateo County, California, and is a citizen of the State of California for purposes of 28 U.S.C. § 1332(a).

---

[1]    First names are used because each of the Plaintiffs has the same last name.

3. Plaintiff Jamie Ruigomez ("Jamie") is, and at all relevant times was, an individual residing in San Mateo County, California, and is a citizen of the State of California for purposes of 28 U.S.C. § 1332(a).

4. The DiNardo Law Firm is, and at all relevant times was, a New York corporation with its principal place of business in Buffalo, New York, and is a citizen of the State of New York for purposes of 28 U.S.C. § 1332(a)(1), (c).

5. Joseph DiNardo ("DiNardo"), an individual, is, and at all relevant times was, a New York attorney residing in Buffalo, New York, and is a citizen of the State of New York for purposes of 28 U.S.C. § 1332(a). DiNardo is also the principal of The DiNardo Law Firm.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by their fictitious names. Plaintiffs are informed and believe that each of the Defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings caused by Defendants herein referred and caused damage to Plaintiffs as herein alleged. When Plaintiffs ascertain the true names and capacities of Does 1 through 20, inclusive, they will ask leave of this Court to amend this Complaint by setting forth the same.

7. Plaintiffs are informed and believe that, at all times herein mentioned, DiNardo was the agent, principal, and employee of the DiNardo Law Firm, and in doing the things hereinafter alleged, was acting within the course and scope of such agency.

## JURISDICTION AND VENUE

8. This is a diversity action brought under 28 U.S.C. § 1332.

    a. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

b. This Court has personal jurisdiction over Defendants because DiNardo resides in, practices law in, and/or does business in the State of New York and in the Western District of New York, and because The DiNardo Law Firm is incorporated under the laws of the State of New York, has its principal place of business in the State of New York, and does business in the State of New York and in the Western District of New York. In addition, the acts by Defendants as alleged below occurred in, among other places, the State of New York and in the Western District of New York.

9. Venue in this district is proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District. In addition, venue in this district is proper because the acts by Defendants as alleged below occurred in, among other places, the Western District of New York.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.  Plaintiffs retain GK to represent them in a personal injury action.**

10. On September 9, 2010, Joseph was severely burned at the Plaintiffs' San Bruno, California home as a result of the Pacific Gas and Electric corporation ("PG&E") natural gas pipeline explosion. Joseph was left in a coma, his girlfriend was killed, and Jamie and Kathleen were traumatized.

11. On October 1, 2010, Plaintiffs retained GK to represent them in a personal injury action against PG&E and GK agreed its contingency fee "will be Twenty-Five (25%) of the total recovery after costs . . . ."

12. Plaintiffs' case at GK was handled by attorneys Thomas Girardi ("Girardi") and Robert Finnerty ("Finnerty"), but Finnerty mostly communicated with Plaintiffs.

13. In a June 22, 2012 letter to Plaintiffs, Finnerty limited Plaintiffs' communications to Finnerty, Jim O'Callahan, and Kimberly Archie by stating "[w]ould you do us a favor and if you have any questions, concerns or inquiries about your case please direct those to me Jim or Tom only," and "of course you can talk to Kim." Girardi

and Finnerty did this to make it more likely they could conceal the amount of the expected settlement from Plaintiffs and where those funds would be transferred to.

### B.  Plaintiffs attend mediation and the case is settled.

14.  On January 10, 2013, PG&E and Plaintiffs attended a mediation with Finnerty and Girardi.  At the mediation, Girardi said the case settled but he and Finnerty did not tell Plaintiffs how much the case settled for, how much they were to receive, and when they were to receive the monies.

15.  Girardi only stated that GK would hold the settlement monies in trust, with Girardi and Kathleen as trustees of the trust, while GK was determining the amount of the medical liens.  Girardi further stated that Plaintiffs' settlement monies would earn 6.5% annual interest, which GK would pay to Plaintiffs.

16.  At the mediation, Girardi and Finnerty also only gave Plaintiffs signature pages to sign and did not give Plaintiffs a copy of the settlement agreement.  Further, although Girardi said Kathleen was a co-trustee, she never saw a trust instrument and never had access to the settlement funds, or any accounting of the funds.

17.  Girardi and Finnerty concealed the settlement amount because they both knew GK would ultimately use Plaintiffs' settlement monies for improper and unlawful purposes without Plaintiffs' consent.

### C.  GK receives a $28 million settlement wire from PG&E and Girardi and DiNardo cause the DiNardo Law Firm to receive $6,325,000 of Plaintiffs' Settlement Monies.

18.  On January 24, 2013, unbeknownst to Plaintiffs, PG&E wired $28,000,000 of the t settlement to the GK client trust account.

19.  On February 12, 2013, also unbeknownst to Plaintiffs, Girardi made a $5,825,000 check, from Plaintiffs' settlement monies in the GK client trust account, payable to defendant The DiNardo Law Firm for "Assoc Counsel Fees." Plaintiffs never retained The DiNardo Law Firm, nor did they allow GK to share any

contingency fees earned in their case with The DiNardo Law Firm or DiNardo.  Further, DiNardo has never been a licensed attorney in California.

20.     In fact, Plaintiffs did not know of The DiNardo Law Firm or of the $5,825,000 transfer until they received a copy of the GK Case Card Register for Plaintiffs' account in late October 2019 from their state-court attorneys, Abir, Cohen Treyzon and Salo LLP ("ACTS").

21.     On May 20, 2013, further unknown to Plaintiffs, Girardi made a $500,000 check, from Plaintiffs' settlement monies in the GK client trust account, payable to defendant The DiNardo Law Firm for "Assoc Counsel Fees."  Again, Plaintiffs never retained The DiNardo Law Firm, nor have they allowed GK to share its contingency fees earned from their case with The DiNardo Law Firm or DiNardo.

22.     Plaintiffs also did not know of The DiNardo Law Firm or the $500,000 transfer until they received a copy of the GK Case Card Register for Plaintiffs' account in late October 2019 from ACTS.

23.     Plaintiffs are informed and believe that The DiNardo Law Firm deposited those checks and that the monies were later transferred to DiNardo and/or another of his business entities.

24.     The DiNardo Law Firm and DiNardo had no right to receive any portion of the $6,325,000.

**D.     Girardi, Finnerty, and DiNardo do not send Plaintiffs their settlement monies or their settlement documents and conceal that GK transferred $6,325,000 of Plaintiffs' settlement monies to The DiNardo Law Firm.**

25.     In June 20 and 21, 2013 letters to Kathleen, Girardi stated that Plaintiffs will get interest payments of "6 ½ % interests [sic] starting in July," and that "[t]he funds are locked up for a six-month period."  Girardi stated this although Plaintiffs never agreed to Girardi or GK investing their money.  In fact, Plaintiffs did not even know what their case had settled for.

26. Likewise, in a July 31, 2013 letter to Jamie, Girardi stated "I wanted you to know that I felt very badly not sending your interest check. We have truly cut a very good deal which will go for 18 months and maybe longer for you to receive 6 ½ % interests [sic] on your funds." Again, Girardi stated this although Plaintiffs never agreed to Girardi or GK investing their money.

27. On August 4, 2014, Girardi sent Kathleen an email stating "I think it is more prudent to pay Joseph on a monthly basis. That was an agreement I had with the court when we settled the case. This is strictly for his protection."

28. By August 4, 2014, over a year after the settlement, Plaintiffs still had not received the settlement documents, so they sent a letter to Girardi and Finnerty stating "we still have not received copies of any of our settlement documents or a complete accounting of the settlement, including the documents we all signed the date you settled our case. We requested these documents in the past . . ." and Plaintiffs listed their requested documents of: (i) Settlement Agreement, (ii) Complete Accounting of Settlement & Client Trust Account, (iii) Complete Report of Case Cost, (iv) Annuity Agreement, (v) Annuity Application, (vi) Annuity Policy, and (vii) Copy of Expert Reports and Settlement Video (the "Client Documents"). Nevertheless, no one at GK sent Plaintiffs the Client Documents.

29. On October 21, 2014, Girardi sent Joseph a letter stating "Justice Panelli watches over this case. He always has concerns about a young man receiving so much money and wants to make sure that it doesn't end up causing him harm. Justice Panelli agreed we can pay this distribution . . . ."

30. On October 30, 2014, Finnerty sent Plaintiff forms entitled Consent to Settle and Authorization to Make Disbursements ("Consent to Settle") and asked that Plaintiffs "agree to the settlement and disbursements." Plaintiffs were surprised to see the Consent to Settle because they understood they settled their case at the mediation. Finnerty also listed "Net to JOSEPH RUIGOMEZ $9,931,066.97," but did not include

any of the Client Documents.  To Plaintiffs, this document made it appear that Plaintiffs' monies were currently being held in the GK client trust account.

31. On February 23, 2015, Girardi sent Kathleen a letter with a check stating the "firm will pay the tax on this investment.  I hope this makes you happy.  The issue with your young son is a little more complicated.  We will discuss the matter with Justice Panelli.  He is very concerned to make sure that this young man is protected."

32. By April 29, 2015, Joseph had not received the $9,931,066.97 or any interest payments so he emailed Girardi and Finnerty to let them know he received no monthly interest checks for this year.

33. Notwithstanding that two years had passed since Plaintiffs' settlement, and that Plaintiffs had not been paid their million-dollar settlement and were owed thousands of dollars in interest, Girardi and Finnerty never said to Plaintiffs that GK does not have Plaintiffs' money in the client trust account.  Finnerty also never told Plaintiffs that they may have claims against GK and/or Girardi for failure to pay their settlement monies and earned interest.

34. From 2016 to 2019, GK continued to make intermittent interest payments to Plaintiffs, but their settlement monies and all earned interest were never paid.  Plaintiffs simply trusted Girardi and Finnerty that everything was okay.  And why shouldn't they have, as GK had a stellar reputation and California attorneys owe a duty of loyalty and a fiduciary duty to the clients.

**E.     Plaintiffs demand their settlement monies.**

35. Nevertheless, after about six years, Plaintiffs could take it no longer so on April 30, 2019, Joseph emailed Girardi and Finnerty to demand all of Plaintiffs' money stating he is owed $14,094,312.61, Kathleen $997,867.12 and Jamie $251,087.85 and to please wire transfer the funds to Merrill Lynch by Friday May 3, 2019.

36. In a May 2, 2019 email to GK, Joseph further requested all of Plaintiffs' monies held in the client trust account of $13,944,312.61 and that the funds be wired to him by May 3, 2019.

37. In response, GK partner David Lira said "I do not know the terms of your settlements/agreements having never worked on your case. Prior to this past Friday (April 26, 2019), I was unaware any money was owed to you. Bob Finnerty provided some vague details which I immediately gave to Tom [Girardi], whom I understand called you. Let it known [sic] that I do not own this law practice, am not a partner nor control of bank accounts. As such, I do not have access to any accounting or your settlement documents."

38. Kathleen knew GK independent contractor Kimberly Archie ("Archie"), and she was a client as GK was handling her son's wrongful death case, so she then asked Archie to see if she could speak to Girardi about paying Plaintiffs their settlement monies.

39. On May 26, 2019, Archie met with Girardi and he agreed to wire $5 million to the Plaintiffs the next day and another $5 million in July 2019. The next day Girardi caused $5 million to be wired to Joseph's Merrill Lynch account.

40. In mid-June 2019, Plaintiffs met with Boris Treyzon, a partner at ACTS, regarding possible representation against Girardi and GK.

41. On June 21, 2019, Plaintiffs retained ACTS to represent them against GK and Girardi to recover the unpaid paid portion of their settlement.

42. On June 26, 2019, ACTS filed a complaint against GK and Girardi on behalf of Plaintiffs to recover their settlement.

43. In late October 2019, ACTS received documents from Girardi and GK. Those documents contained a Case Card Register which showed the Plaintiffs for the first time that on February 12, 2013, $5,825,000, and on May 20, 2013, $500,000, were transferred from the GK client trust account to The DiNardo Law Firm.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Conversion)

44. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43 inclusive, of this Complaint, and by this reference incorporate them herein as though set forth in full.

45. Plaintiffs own and have a right to the $6,325,000 because it was their settlement money in the GK client trust account.

46. DiNardo caused the $6,325,000 to be transferred to The DiNardo Law Firm when The DiNardo Law Firm and DiNardo had no right to any portion of the $6,325,000.

47. As a result of Defendants' conversion, Plaintiffs have been damaged in the amount of $6,325,000 plus interest.

48. Defendants' conduct in converting the $6,325,000 was despicable and carried out in willful disregard for Plaintiffs' rights, and thus Plaintiffs are entitled to punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Receipt of Stolen Property – California Penal Code § 496(c))

49. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 48, inclusive, of this Complaint, and by this reference incorporate them herein as though set forth in full.

50. DiNardo and The DiNardo Law Firm stole $6,325,000 from Plaintiffs' settlement funds maintained in the GK client trust account, in violation of California Penal Code ("PC") §§ 484(a),[2] 496(a), 496(c).

---

[2] The first sentence of PC § 484(a) states that "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

51. PC § 496(c) "covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of that section are simply that (i) the property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Siry Investment, L.P. v Farkhondehpour,* 13 Cal.5th 333, 354-355 (2022) (cleaned up).

52. The $6,325,000 of Plaintiffs' settlement monies was stolen from the GK client trust account because these monies were held in trust for Plaintiffs in the GK client trust account and control of the $6,325,000 could not be transferred to any party without Plaintiffs' written consent.

53. DiNardo and The DiNardo Law Firm knew the funds were stolen because they instructed Girardi to send the monies from the GK client trust account and when they received the checks each stated it was from the GK client trust account and not the GK general account. Additionally, DiNardo, who is a New York attorney, knew and knows that monies in a law firm's client trust account do not belong to the law firm.

54. The DiNardo Law Firm received the $6,325,000 and DiNardo had possession of the monies because he is and was the principal at The DiNardo Law Firm and thus had authority to disburse the funds as he wished.

55. Plaintiffs have been damaged in the amount of $6,325,000 and pursuant to PC § 496(c) are entitled to treble damages, reasonable attorneys' fees, and costs of suit.

56. Additionally, Defendants' conduct in converting the $6,325,000 was despicable and carried out in willful disregard for Plaintiffs' rights, and thus Plaintiffs are entitled to punitive damages.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Aiding and Abetting Concealment of Stolen Property – California Penal Code § 496(c))

57. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 56, inclusive, of this Complaint, and by this reference incorporate them herein as though set forth in full.

58. Girardi and GK embezzled $6,325,000 of Plaintiffs' settlement funds from the GK client trust account in violation of PC §§ 484(a), 496(a), 496(c).

59. DiNardo and The DiNardo Law Firm each aided Girardi and GK in concealing and withholding the settlement funds from Plaintiffs.

60. At the time DiNardo and The DiNardo Law Firm aided Girardi and GK, they both knew that Girardi and GK had embezzled the money and that their actions were wrongful.

61. Plaintiffs were injured by DiNardo and The DiNardo Law Firm's assistance to Girardi and GK in concealing and withholding Plaintiffs' settlement funds.

62. Pursuant to PC § 496(c), Plaintiffs are entitled to $6,325,000 and treble damages and reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Unfair Business Practices – California Business and Professions Code § 17200)

63. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62, inclusive, of this Complaint, and by this reference incorporate them herein as though set forth in full.

64. California Business and Professions Code ("BP") § 17200 prohibits unfair and unlawful business practices and provides for restitution to any person who has lost money or property as a result of such practices.

65. It is unlawful to embezzle, steal, and/or convert another person's money.

66. The DiNardo Law Firm unlawfully and unfairly received $6,325,000 of Plaintiffs' settlement money from the GK client trust account.

67. Plaintiffs are entitled to restitution of $6,325,000 and the disgorgement from The DiNardo Law Firm and DiNardo of any profits that The DiNardo Law Firm and/or DiNardo earned on the $6,325,000.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Unjust Enrichment)**

68. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 67, inclusive, of this Complaint, and by this reference incorporate them herein as though set forth in full.

69. The elements of an unjust-enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another.

70. The DiNardo Law Firm and DiNardo received the $6,325,000 of Plaintiffs' settlement monies which prevented Plaintiffs from receiving all of their settlement monies from GK, so Plaintiffs have been damaged by Defendants in the amount of $6,325,000.

### JURY DEMAND

71. Plaintiffs demand trial by jury on all matters triable by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants, and each of them, on all claims as follows:

**FIRST CAUSE OF ACTION:**

1. For damages in an amount no less than $6,325,000;
2. For interest from the time of the conversion to the entry of judgment as permitted by law;
3. For interest at the legal rate from the date of entry of the judgment until paid in full;
4. For punitive damages;
5. For costs of suit incurred herein; and

      6.      For such other and further relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION:**

      1.      For damages in an amount no less than $6,335,000;

      2.      For treble damages on the $6,325,000 of damages;

      3.      For interest from the time of the theft to entry of the judgment as permitted by law;

      4.      For interest at the legal rate from the date of entry of the judgment until paid in full;

      5.      For reasonable attorneys' fees as permitted by law;

      6.      For costs of suit incurred herein; and

      7.      For such other and further relief the Court may deem just and proper.

**THIRD CAUSE OF ACTION:**

      1.      For treble damages in an amount no less than $6,325,000;

      2.      For treble damages on the $6,325,000 of damages;

      3.      For interest from the time of the theft to entry of the judgment as permitted by law;

      4.      For interest at the legal rate from the date of entry of the judgment until paid in full;

      5.      For reasonable attorneys' fees as permitted by law;

      6.      For costs of suit incurred herein; and

      7.      For such other and further relief the Court may deem just and proper.

**FOURTH CAUSE OF ACTION:**

      1.      For restitution of at least $6,325,000;

      2.      For disgorgement of profits earned on the $6,325,000 or any

portion thereof;

        3.        For interest from the time of the theft to entry of the judgment;

        4.        For interest at the legal rate from the date of the entry of the judgment until paid in full;

        5.        For costs of suit herein; and

        6.        For such other and further relief the Court may deem just and proper.

**FIFTH CAUSE OF ACTION:**

        1.        For damages of at least $6,325,000;

        2.        For interest from the time of receipt of the $6,325,000 to entry of the judgment;

        3.        For interest at the legal rate from the date of the entry of the judgment until paid in full;

        4.        For costs of suit herein; and

        5.        For such other and further relief the Court may deem just and proper.

Dated:        Buffalo, New York
                 October 20, 2022

        **HOOVER & DURLAND LLP**
        *Attorneys for Plaintiffs Joseph Ruigomez, Kathleen Ruigomez, and Jamie Ruigomez*

        By: s/Timothy W. Hoover
             Timothy W. Hoover
        561 Franklin Street
        Buffalo, New York 14202
        Telephone: (716) 800-2604
        *thoover@hooverdurland.com*